Tommy Ray BUTLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–208 CR.

Court of Appeals of Texas,
Beaumont.

Submitted March 29, 1994.

Decided May 11, 1994.

John D. Reeves, Lufkin, for appellant.

Clyde M. Herrington, Dist. Atty., Art Bauereiss, Asst. Dist. Atty., Lufkin, for State.

Before WALKER, C.J., and
BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant waived trial by a jury and thereafter was convicted by the trial court, on his plea of "not guilty," of the felony offense of Aggravated Sexual Assault. The trial court then assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty (50) years. Appellant raises two points of error for our consideration, *viz:*

> Point of Error One: The evidence was insufficient to prove that appellant committed the offense of Aggravated Sexual Assault.

> Point of Error Two: The evidence was insufficient to prove that the appellant engaged in sexual contact with the complainant.

Rather than a complaint of lack of proof of all of the essential elements of the charged offense, appellant contends under his first point of error that the evidence does not support a finding that there were acts or words occurring in the presence of the victim which threatened to cause serious bodily injury to the victim as alleged in the indictment.[1] Appellant correctly recognizes that appellate review of the sufficiency of the evidence to support a conviction is governed

---

1. The pertinent indictment language reads as follows: "... and the defendant did then and there by acts and words threaten and place Mary (pseudonym) in fear that serious bodily injury would be imminently inflicted on Mary (pseudonym), and said acts and words occurred in the presence of Mary (pseudonym), ..."

by the standards set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). Appellant argues that since there was no showing of acts or words placing the victim in fear of serious bodily injury, appellant could only be convicted of the lesser included offense of Sexual Assault.

A similar contention was raised by the defendant in *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex.Crim.App.1992). In *Grunsfeld*, Presiding Judge, Retired, John Onion, Jr., writing for the majority, analyzed the defendant's complaint as follows:

> Aggravated sexual assault is sexual assault with the additional element that the assaulter has placed the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person. Tex.Penal Code Ann. § 22.021 (Vernon 1989). The jury is mandated to assay first if that state of fear in fact existed; the defendant's conduct is then assessed to determine if it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct. *Douglas v. State*, 740 S.W.2d 890, 891 (Tex.App.—El Paso 1987, no pet.); *see Kemp v. State*, 744 S.W.2d 243, 245 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). The jury may consider an appellant's objective conduct, his acts, words, or deeds and infer from the totality of the circumstances whether an appellant's overall conduct placed the complainant in fear of serious bodily injury. *Kemp*, 744 S.W.2d at 245. It is *not* necessary to show that serious bodily injury or death *was threatened* or inflicted. It is also *not* necessary to show that the appellant *could have inflicted* serious bodily injury. *Id.* (emphasis added)

In the instant case, the victim testified that she had known appellant for six or seven years prior to the incident. She further testified that as she was walking to a store to purchase groceries and cigarettes, appellant came up from behind her and stated, "[Y]ou are not going home, we are fixing to go fuck." The victim then testified that appellant started hitting her and dragging her into a wooded area. The victim screamed for help but no one came to her assistance. Appellant squeezed the victim's hands behind her back as he took her to the wooded area. At one point, the victim attempted to escape, but appellant caught her, struck her, and told her "to get my ass mother-fucking up because I wasn't going to get away like that." Eventually, appellant took the victim further into the woods, tore off her clothes, and engaged in sexual intercourse with the victim. The following is the victim's direct testimony of the act:

> Q. [the State] Okay. And he did, did he pull any of your clothes off?
>
> A. [Victim] Yes, sir. He pulled my underclothes off.
>
> Q. All right. And what did he do whenever once he got your underclothes off and got his pants down?
>
> A. He stuck his thing inside me.
>
> Q. Okay. His penis?
>
> A. Yes, sir.
>
> Q. Okay. Did he cause his sexual organ to penetrate your vagina?
>
> A. Yes, sir.
>
> Q. Okay. Did he have your consent to do that?
>
> A. No, sir.
>
> Q. Did you ask him not to do that?
>
> A. I begged him not to.
>
> Q. Okay. Let me ask you this. Did he say anything to you that scared you?
>
> A. Yeah, he told me that if I had to call the police, he was going to do something to me.
>
> Q. Like what?
>
> A. Hurt me or my family.
>
> Q. Did you believe him?
>
> A. Yes.

The victim then testified that when appellant had finished, he contemplated taking the victim to Houston to his sister's house apparently in order to hide the victim or to prevent her from contacting authorities. Eventually, appellant brought the victim back to her sister's house. The victim's fifteen year old niece, Angela Brown, testified that she let the victim and appellant into the house early

in the morning. Angela testified that the victim immediately went to Angela's bedroom and started crying. The victim told Angela what appellant did to her. Angela described the clothes the victim was wearing as having the pockets torn up and no buttons on the dress. The victim's white shirt was also dirty. The victim told Angela that appellant had ripped the dress. The victim borrowed some clothes from Angela and changed out of the torn and dirty outfit. Angela further testified that at one point, she (Angela) witnessed appellant enter the bedroom and heard appellant tell the victim not to say anything. Angela also described the victim's physical injuries. These included whelps on the victim's right arm from the elbow down to her hand; a swollen face; and scratches around her neck. Angela also observed the victim to be quite emotionally upset. Appellant took the stand in his behalf and denied having sexually assaulted the victim. The defense also called appellant's common-law wife, Michelle Hulett. Without going into detail, Ms. Hulett's testimony contradicted key portions of appellant's testimony as to appellant's whereabouts at the time the offense was taking place. Furthermore, Ms. Hulett admitted during cross-examination by the State that she telephoned the office of appellant's trial counsel posing as the victim and requested that the criminal charges be dropped. Ms. Hulett admitted that the telephone call was a lie.

The trial court, as finder of fact in the instant case, could have believed the victim's testimony and wholly disbelieved any of the defense's evidence. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); and *Sanders v. State,* 834 S.W.2d 447, 449 (Tex.App.—Corpus Christi 1992, no pet.). We find that all of the evidence depicting the victim's psychological and emotional state provides sufficient evidence that fear of serious bodily injury existed in the victim's mind during her ordeal. We further find the description of appellant's conduct toward the victim, before, during and after the sexual assault, provides sufficient objective evidence that said conduct was the producing cause of the victim's

fear and that said fear was reasonable in light of appellant's conduct. The victim was beaten and dragged all over a wooded area. The victim was brought to a house where the occupant refused to call authorities or aid her in any way. The victim was threatened with harm personally and through harm to her family if she did not cooperate with appellant. She was also made aware of the possibility of being kidnapped to Houston or held elsewhere incommunicado. We therefore find the aggravating element of the offense proven beyond a reasonable doubt. *See Criner v. State,* 860 S.W.2d 84 (Tex.Crim.App. 1992). Point of error one is overruled.

Under his second point of error, appellant does not argue that there is no evidence of "sexual contact" between appellant and the victim. Instead, appellant complains that the victim's testimony as to the sexual assault was not corroborated by scientific evidence or other supporting evidence. Appellant's brief, however, fails to provide any constitutional, statutory, or case authority to support this claim. This is undoubtedly an inadequately briefed point of error and we normally refuse to address it. *See McDuffie v. State,* 854 S.W.2d 195, 200–201 (Tex. App.—Beaumont 1993, pet. ref'd). However, the law on the sufficiency of uncorroborated testimony of aggravated sexual assault victims is well settled and needs only to be touched upon briefly. Tex.Code Crim.Proc. Ann. art. 38.07 (Vernon Supp.1993)[2] plainly states that a conviction for the offense of Aggravated Sexual Assault is supportable on the uncorroborated testimony of the victim if the victim informed any person of the alleged offense within six months of the alleged offense date. In the instant case, the testimony of the victim's niece, as described *infra,* indicates that the victim told her niece of the sexual assault by appellant only hours after the attack. Under art. 38.07, corroboration was unnecessary to sustain the conviction. Point of error two is overruled; the judgment and the sentence are affirmed.

AFFIRMED.

---

**2.** *See now* Tex.Code Crim.Proc.Ann. art. 38.07 (Vernon Supp.1994).